In re G.S. STOWELL, Debtor.

Bankruptcy No. 98–60654.

United States Bankruptcy Court,
N.D. New York.

Dec. 10, 1998.

Wayne R. Bodow, Syracuse, New York, for debtor.

Phillips, Lytle, Hitchcock, Blaine & Huber, LLP, Rochester, New York, Gregory M. Trusso, of counsel.

Mark Swimelar, Syracuse, New York, Chapter 13 Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This matter is before the Court by way of an Order to Show Cause dated July 6, 1998. G.S. Stowell ("Debtor") seeks an

order compelling Marine Midland Bank Mortgage Corporation ("Marine") to accept postpetition mortgage payments from him and restraining Marine from proceeding with a foreclosure sale of real property located at 131 Lakeview Avenue in Syracuse, New York ("Property").

The matter was scheduled to be heard on July 14, 1998, at the Court's regular motion term in Syracuse. Following oral argument, the parties were asked to submit memoranda of law by August 1, 1998. After further oral argument on August 4, 1998, the matter was submitted for decision by the Court.[1]

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the subject matter and the parties of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(A) and (O).

### FACTS

On February 5, 1998, the Debtor filed a voluntary petition ("Petition") seeking relief under chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").[2] In his Petition, the Debtor describes his business as "rental, management and acquisition of real estate for long term profit." Debtor lists the value of the Property as $57,000, subject to Marine's mortgage of approximately $49,000. See Schedule D attached to the Petition. The Order confirming the Debtor's chapter 13 plan was signed August 5, 1998, and provides that the arrears owed to Marine on its mortgage on the Property are to be paid through the plan over a period of 20 months at a rate of $200 per month. The regular mortgage payments are to be paid directly to Marine by the Debtor.

The Debtor and John J. Zimmerman ("Zimmerman") ("Purchasers" or "Benefi-

ciaries") executed a contract for the purchase of the Property on or about June 13, 1996. See Debtor's Supplemental Memorandum of Law, filed August 3, 1998, at Exhibit A. Under the terms of the contract, the Purchasers agreed to assume the mortgage on the Property. The Change of Mortgage Notification, dated June 21, 1996, identifies the new owner of the Property as the 131 Lakeview Avenue Land Trust and lists a Social Security number 114–52–3417, which, according to the Petition, is that of the Debtor. See id. at Exhibit C. The deed, dated June 21, 1996, transferring the Property identifies the transferee as the 131 Lakeview Avenue Land Trust ("Trust") and is signed by the Debtor as Trustee of the 131 Lakeview Avenue Land Trust. See id. at Exhibit B.

Also executed on June 21, 1996, was a Land Trust Agreement ("Trust Agreement") identifying Zimmerman and the Debtor as 50% beneficiaries of the Trust and the Debtor as the Trustee. See id. at Exhibit C. According to the terms of the Trust Agreement, the Beneficiaries were "about to convey or cause to be conveyed certain real property to the Trustee...." Id. The purpose of the Trust was "for the Trustee to take and hold title to the property conveyed to the Trustee...." Id. Paragraph 4 sets forth the powers and duties of the Trustee, including the power to make and execute contracts for the lease or sale of the Property. It further states, however, that the Trustee "shall exercise his powers only upon the written direction of a majority in interest of the Beneficiaries. Id. at ¶ 14 of the Trust Agreement. According to ¶ 12 of the Agreement the Beneficiaries were entitled to "all of the profits, earnings [sic], avails and proceeds of the Trust Property." In addition to having the right to receive the

---

1. At the hearing on August 4, 1998, the Court granted a preliminary injunction prohibiting Marine from any further foreclosure of the Property pending the Court's decision. This was memorialized in a written Order, signed September 18, 1998.

2. On July 9, 1998, the Debtor filed an Amended Petition identifying other names used by him in the last six years, including "Avenue Land Trust", "G.S. Stowell as Trustee and 100% beneficiary of 131 Lakeview", "Gordon S. Stowell" and "Gordon Scott Stowell."

profits, earnings and proceeds ..., the Beneficiaries also had the "right to lease, manage and control the Trust Property...." *Id.* at ¶ 13 of the Trust Agreement. Paragraph 14 acknowledges that the Beneficiaries had the "right to assign any part or all of their interests in this Trust." No assignment shall be valid or affect the interest of the Beneficiaries hereunder until the original of the assignment shall be delivered to the Trustee and the Trustee's acceptance acknowledged thereon." Paragraph 18 states that the Trust Agreement is to be governed, construed and enforced in accordance with the laws of the State of New York.

On or about June 22, 1998, Zimmerman assigned all of his beneficial interests in the Trust to the Debtor. *See id.* The Assignment is signed only by Zimmerman and two witnesses.

### ARGUMENTS

The Debtor takes several positions in arguing that the Property is property of the estate and that the automatic stay prevents Marine from foreclosing on it. The Debtor contends that as a result of the postpetition assignment of Zimmerman's beneficial interest in the Trust to the Debtor the Trust terminated because the interests of the Trustee and both Beneficiaries merged. Therefore, the Debtor asserts that pursuant to Code § 541(a)(7) the Property is property of the estate because upon merger the Debtor acquired legal title to it after the commencement of the case. In the alternative, the Debtor asserts that the Trust was void at the time it was created because the deed transferred the Property to the Trust rather than to the Trustee.

Citing to *In re Gallucci,* 931 F.2d 738 (11th Cir.1991) and *In re Springfield Fur-*

*niture, Inc.,* 145 B.R. 520 (Bkrtcy.E.D.Va. 1992), Marine argues that the scope of Code § 541(a)(7) is limited to "the acquisition of interests in which the Debtor had a prior interest." *See* Marine's Memorandum of Law, filed July 31, 1998, at 3. Therefore, it is Marine's position that because the Debtor did not have legal title to the Property at the time he filed his Petition as that was held by the Debtor in his role as Trustee, it is not property of the estate and the automatic stay is inapplicable.

Marine also asserts that if there was a transfer of the Property, under state law it was fraudulent based on the allegation that it was made without consideration at a time when the Debtor was insolvent.[3]

### DISCUSSION

■ The issue before the Court is whether the Property should be excluded from the Debtor's estate. Code § 541(a) defines what is property of the bankruptcy estate. Marine's initial argument is that Code § 541(a)(7) does not apply because the Debtor had no legal interest in the Property prior to the commencement of the case. At the time the Debtor filed his Petition, he held a 50% beneficial interest in the Trust. That interest is property of the estate. *See In re Langley,* 30 B.R. 595, 598 (Bankr.N.D.Ind.1983) (citations omitted).

■ The nature of this interest in the Trust with respect to the Property, although a matter of federal law, *see id.,* requires the Court to first examine what a land trust is. As discussed in *In re Smith,* 224 B.R. 388, 397 (Bankr.N.D.Ill.1998),

> [a] land trust is created by the execution of a deed in trust transferring all legal and equitable title to real property to a trustee. The original owner is designat-

---

**3.** In its Memorandum of Law, Marine contended that under New York law a trust does not merge if there are any outstanding interests in the Trust other than those of the Debtor and Zimmerman. In his Supplemental Memorandum of Law, Debtor provided a copy of the Trust Agreement in which it is indicated that Zimmerman and the Debtor each held a 50% interest as Beneficiaries in the Trust and, therefore, there were no outstanding interests.

ed as the beneficiary of the trust and retains an assignable personal property interest in the trust. A second document, the trust agreement, is contemporaneously executed and outlines the right of the beneficiary to retain absolute control over the management, use, and disposition of the property and to receive all proceeds from the property. Unlike the conventional trust in which the trustee is vested broad powers over the management and disposition of the trust property, the land trustee may act only at the beneficiary's direction. The trust agreement is not recorded and normally is kept secret from the public.

quoting *Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 607 (7th Cir.1987) (internal citations omitted). The "characterization of the beneficiary's interest as personal property without legal or equitable title to the realty is not controlling for purposes of federal law." *In re Gladstone Glen,* 628 F.2d 1015, 1019 (7th Cir.1980). Indeed, the bankruptcy courts, as courts of equity, have looked beyond the form of the transaction to the substance and concluded that the focus should be on who has control over the real property in determining who is the true "owner" of it. *See id.; Langley,* 30 B.R. at 599; *Smith,* 224 B.R. at 398; *In re Ainslie & Belle Plaine Ltd. Partnership,* 145 B.R. 950, 955 (Bankr. N.D.Ill.1992); *see also Matter of Pentell,* 777 F.2d 1281, 1284 (7th Cir.1985) (noting that "the beneficiaries' equitable interest in the trust made the real property part of the debtor beneficiary's estate. This is true as a matter of federal bankruptcy law regardless of how the state characterizes the actual legal ownership of the property."). Pursuant to the terms of the Trust Agreement, it was the two Beneficiaries that had the right to lease, manage and control the Trust Property. Thus, the Court concludes that at the time the Debtor filed his Petition, he "owned" a 50% interest in the Property and that interest was property of the estate.

Furthermore, Code § 541(a)(7) of the Code indicates that the estate is composed of "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). The legislative history sheds some light on the intent and purpose of this provision.

[Section 541(a)(7) ] clarifies that any interest in property that the state acquires after the commencement of the case is property of the estate; for example, if the estate enters into a contract, after the commencement of the case, such a contract would be property of the estate ... [T]his provision ... clarifies that section 541(a) is an all embracing definition which includes charges on property, such as liens held by the debtor on property of a third party, or beneficial rights and interests that the debtor my have in property of another. However, only the debtor's interest in such property becomes property of the estate. If the debtor holds bare legal titles or holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate.

124 Cong.Rec. H 11096, H 11114 (Sept. 28, 1978).

▮ Code § 1306 provides that "[p]roperty of the estate includes, in addition to the property specified in 541 ... all property ... that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11 or 12." The legislative history specifically indicates that Code § 1306 broadens the definition of property for chapter 13 purposes. *See* H.R. No. 95–595, H.R. 8200, 95th Cong., 1st Sess. (1977). Thus, the two cases cited by Marine, namely *Gallucci* and *Springfield Furniture,* which were both chapter 7 cases, have no relevance to the matter presently before the Court. Code § 1306 clearly allows for inclusion of property acquired by the Debtor postpetition as property of the estate. Accordingly, as a result of the Assignment, 100% of the Property is

now property of the estate and protected by the automatic stay from foreclosure.[4] Whether or not there has been a merger as a result of the Assignment and the fact that the Debtor is both trustee and sole beneficiary need not concern this Court for purposes of this discussion. It is sufficient that Zimmerman's transfer of his 50% interest in the Trust to the Debtor resulted in all of the Property being part of the Debtor's estate.

 Marine makes the argument that even if the transfer of Zimmerman's interest to the Debtor was effective, it was fraudulent and, therefore void. Citing to New York Debtor & Creditor Law ("NYD & CL") §§ 273 and 276, Marine asserts that "a conveyance involving an insolvent person is presumed to be fraudulent if the conveyance is made without fair consideration." See Marine's Memorandum of Law at 6. In addition, Marine argues that the Assignment was made with the intent to hinder, delay or defraud the Debtor's creditors and is, therefore, fraudulent pursuant to NYD & CL § 276. However, the focus of these two statutes is on the *transferor* who is or will be rendered insolvent as a result of the transfer. In this case, the Debtor is the *transferee* of the assignment of the 50% interest in the Trust. There is nothing in the facts before the Court to suggest that Zimmerman was insolvent or rendered insolvent as a result of his transfer/assignment of his interest. Whether he made the transfer with the intent to hinder or defraud *his* creditors certainly is not an appropriate issue to be addressed by this Court under the circumstances.

Based on the foregoing, it is hereby

ORDERED that Marine is enjoined from foreclosing on the Property by virtue of Code § 362(a); and it is further

ORDERED that Marine accept postpetition mortgage payments from the Debtor.

---

4. While the Trust Agreement requires the Trustee to acknowledge any assignment in order for it to be valid, "[p]arties to a contract may waive a provision in an agreement, including a condition precedent." *Ainslie*, 145 B.R. at 954 (citation omitted). In this case, the Debtor is both assignee and trustee. By claiming to hold a 100% beneficial interest in the Trust/Property, the Debtor makes it clear that he is waiving any argument that he might have, as Trustee, that the assignment was ineffective.